J-S38028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
   :        PENNSYLVANIA
   :
v.    :
   :
   :
   :
MATTHEW JOHNSON    :
   :
Appellant    :    No. 2784 EDA 2017

Appeal from the Judgment of Sentence July 18, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0004231-2016

BEFORE:   OTT, J., DUBOW, J., and COLINS*, J.

MEMORANDUM BY DUBOW, J.:        **FILED DECEMBER 23, 2019**

Appellant, Matthew Johnson, appeals from the Judgment of Sentence entered by the Delaware County Court of Common Pleas following his conviction after a bench trial of three counts of Sale of Noncontrolled Substance Representing as a Controlled Substance.[1] He raises a challenge to the sufficiency of evidence. After careful review, we reverse his convictions and vacate his Judgment of Sentence.

We glean the following facts from the certified record. In February 2016, Police Officer Stacey Rucker participated in an undercover drug operation investigation in Darby Borough. While monitoring Instagram, she observed a photograph of three small blue pills in a clear vial with dark purple liquid,

---

[1] 35 P.S. § 780-113(a)(35)(ii).

---

\*   Retired Senior Judge assigned to the Superior Court.

labeled "pancakes and syrup,[2] who wants some[?]" N.T. Trial, 7/18/17, at 17. The photograph was associated with the Instagram account belonging to Itstatagg.

On February 11, 2016, Officer Rucker contacted Itstatagg through Instagram, and inquired about purchasing "pancakes and syrup." In response, Itstatagg gave Officer Rucker a cell phone number to text message when she was ready to make a purchase.

On February 15, 2016, Officer Rucker texted the cell phone number and arranged to purchase four vials of "pancakes and syrup" for $70 at the 9th and Main Street trolley loop that afternoon. When she arrived at the trolley loop, Officer Rucker recognized Appellant from photograms on the Itstatagg Instagram account. Appellant reached into a duffle bag and pulled out four vials filled with dark liquid. In return for the four vials, Officer gave Appellant $70 in cash.

Two days later, on February 17, 2016, Officer Rucker texted the cell phone number again and requested four more vials of "pancakes and syrup." She again met Appellant at the 9th and Main Street trolley loop later that day, where Appellant gave her four vials for $70.

---

[2] "Pancakes and syrup" is the street name for a mix of the narcotic codeine and promethazine. N.T. Trial, 7/18/17, at 18. Codeine is a controlled substance; promethazine is not. **See** 35 P.S. § 780-104 (schedules of controlled substances).

Officer Rucker contacted Appellant on February 25, 2016, and inquired about purchasing "lean."[3] Appellant informed her that he only had half-ounce jars of "lean" for sale for $20 each, plus a delivery fee; Officer Rucker agreed to purchase jars at that price. They met again at the trolley loop where Appellant gave her two half-ounce jars of purple liquid in exchange for $50. He informed her that "these ones are stronger than the last ones." N.T. Trial at 35.

Officer Rucker sent the vials and jars she purchased from Appellant to the Pennsylvania State Police laboratory for testing, which revealed that none of the items she purchased from Appellant contained any controlled substances. The Commonwealth charged Appellant with three counts of Sale of Noncontrolled Substance Representing as a Controlled Substance.

On July 18, 2017, the court held a bench trial, in which Officer Rucker was the sole witness. The court found Appellant guilty of all three counts. On the same date, the court sentenced him to an aggregate term of four to twenty-three months of imprisonment. Appellant filed a Post-Sentence Motion, which the trial court denied.

Appellant filed a Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

In his Brief, Appellant raises the following issue: "[w]hether [the] Commonwealth presented sufficient evidence that [Appellant] sold a

---

[3] "Lean" is the street name for codeine. *Id.* at 33.

Noncontrolled Substance Representing as a Controlled Substance under 35 P.S. 780-113[(]35)(ii)," contending that the Commonwealth failed to present any evidence supporting the factors set forth in the statute. Appellant's Br. at 7, 11.

"A claim challenging the sufficiency of the evidence is a question of law." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Miller**, 172 A.3d 632, 640 (Pa. Super. 2017), *appealed denied*, 172 A.3d 632 (Pa. 2018) (internal quotation marks and citations omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." **Id.** "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." **Id.**

Pursuant to 35 P.S. § 780-113(a)(35)(ii):

[N]o person shall knowingly distribute or sell a noncontrolled substance upon the express or implied representation that the substance is a controlled substance. In determining whether there has been a violation of this subclause, the following factors **shall** be considered:

> (A) Whether the noncontrolled substance in its overall finished dosage appearance is substantially similar in

size, shape, color and markings or lack thereof to a specific controlled substance.

(B) Whether the noncontrolled substance in its finished dosage form is packaged in a container which, or the labeling of which, bears markings or printed material substantially similar to that accompanying or containing a specific controlled substance.

(C) Whether the noncontrolled substance is packaged in a manner ordinarily used for the illegal delivery of a controlled substance.

(D) **Whether the consideration** tendered in exchange for the noncontrolled substance **substantially exceeds the reasonable value of the substance**, considering the actual chemical composition of the substance and, where applicable, the price at which over-the-counter substances of like chemical composition sell.

(E) **Whether the consideration** tendered in exchange for the noncontrolled substance **approximates or exceeds the price at which the substance would sell upon illegal delivery** were it actually the specific controlled substance it physically resembles.

35 P.S. § 780-113(a)(35)(ii) (emphasis added).

The first three factors of 35 P.S. § 780-113(a)(35)(ii) pertain to the substance and packaging of the counterfeit substances. The substance must be similar in size, shape, color, and marking to the controlled substance, and in a container similar to the kind used to carry the controlled substance. ***Commonwealth v. Dancy***, 650 A.2d 448, 451 (Pa. Super. 1994). The last two factors pertain to the price of the counterfeit substance—whether the consideration exceeds the reasonable value of the counterfeit substance and

approximates the value of the controlled substance that the purchaser believed she was purchasing. *Id.*

At trial, the Commonwealth produced evidence that addressed only the first three factors of 35 P.S. § 780-113(a)(35)(ii). Officer Rucker's testimony regarding the three transactions noted above showed that the counterfeit substances that Appellant sold to Officer Rucker were similar in appearance, including form and packaging, to "pancakes and syrup" or "lean." Officer Rucker stated that she had made 200 drug purchases in her capacity as an undercover officer, and had encountered "pancakes and syrup." N.T. Trial at 16. She indicated that it was typically packaged in small clear vials with colored liquid. *Id.* at 17, 60. She noted that liquid could be purple or a variety of other colors. *Id.* at 17. Officer Rucker further testified that she had purchased "pancakes and syrup" as well as "lean" in the same forms, including packaging, that Appellant had sold her the counterfeit substances. *Id.* at 60.

However, the Commonwealth presented no evidence regarding the last two factors. The Commonwealth never presented evidence about the type of substance that the officer actually purchased. The parties stipulated only that the laboratory results revealed that the vials and jars at issue did not contain any controlled substances. *Id.* at 64. The parties did not stipulate to the type of substance in the vials and jars. Additionally, Officer Rucker admitted during cross-examination that the bottles "could have [contained] anything. . . . [W]e can't field test." *Id.* at 50. Without evidence of the type of substance that Appellant sold to the officer, the Commonwealth could not establish "the

reasonable value of the substance" as required by subsection D. **See** 35 P.S. § 780-113(a)(35)(ii)(D).

Moreover, Officer Rucker never testified about the prevailing market price of "pancakes and syrup" or "lean." She simply testified about the amount of money she paid Appellant in each of the three transactions, and that she had thought she was purchasing controlled substances. **See id.** at 22, 29, 32, 34, 42-43.

Therefore, even considering all of the evidence admitted at trial in the light most favorable to the Commonwealth as verdict winner, we conclude that the Commonwealth failed to present evidence regarding "[w]hether the consideration tendered in exchange for the noncontrolled substance substantially exceeds the reasonable value of the substance" and "[w]hether the consideration tendered in exchange for the noncontrolled substance approximates or exceeds the price at which the substance would sell upon illegal delivery were it actually the specific controlled substance it physically resembles." 35 P.S. § 780-113(a)(35)(ii)(D)-(E).

Consequently, we conclude that there is insufficient evidence to sustain Appellant's convictions for Sale of a Noncontrolled Substance Representing as a Controlled Substance. Accordingly, we reverse his convictions.

Judgment of Sentence reversed. Jurisdiction relinquished.

Judge Colins joins the memorandum.

Judge Ott files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/23/19</u>